FILED

2025 Jan-10  PM 02:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| HIBBETT RETAIL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:23-cv-00558-JHE |
| | ) | |
| TCH DEVELOPMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER[1]**

In this action, Plaintiff Hibbett Retail, Inc. ("Hibbett") seeks a declaratory judgment against Defendant TCH Development, Inc. ("TCH" or "Contractor"), claiming that TCH breached the contract between them by failing to timely complete construction work on a Hibbett retail store in Dallas, Texas.  (*See* Doc. 11 ("Amended Complaint" or "Amd. Compl.")).   Now before the undersigned are two pending motions.  The first is TCH's filing captioned, "Defendant's Answer and Motion to Dismiss Plaintiff's [Amended] Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3)."  (Doc. 27).  The second is a motion by Hibbett seeking summary judgment pursuant to Rule 56, Fed. R. Civ. P.  (Doc. 30).  Upon consideration, the undersigned concludes that TCH's motion to dismiss (Doc. 27) is due to be denied and Hibbett's motion for summary judgment (Doc. 30) is due to be granted in part and denied in part.  Specifically, Hibbett's motion is due to be granted to the extent it seeks a declaration that TCH breached the parties' contract, but denied in all other respects.

---

[1] The parties have consented to an exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed. R. Civ. P.   (Doc. 15).

## I.    Background

Hibbett is a fashion retailer headquartered in Birmingham, Alabama, and has approximately 1,150 stores located in 36 states.  (Doc. 31-1, Declaration of Jeremy Brown ("Brown Decl.") ¶ 2).  On or about October 10, 2021, Hibbett entered into a contract (hereinafter the "Contract," Doc. 1 at 6-19; Docs. 31-2 & 31-3) with TCH under which TCH was to construct a Hibbett retail store in Dallas, Texas.  (Brown Decl. ¶ 3).  TCH was obligated to complete the work by December 15, 2022.  (*See* Contract § 1.2; Brown Decl. ¶ 4).  Based on those terms, Hibbett scheduled the store to open on January 18, 2023.  (Brown Decl. ¶ 5).  However, TCH failed to complete the work by the agreed-upon date and did not turn over the space until April 2023.  (*Id.*) Hibbett claims it "lost approximately $140,000 per month in sales" due to the delay.  (*Id.*)

The "total cost" of the Contract was $495,000.  (Brown Decl. ¶ 6).  However, Hibbett paid only 90% of that amount ($445,500) and "withheld the remaining [10%] payment," or $49,500. (*Id.*)  Hibbett says the terms of the Contract authorized the withholding because TCH failed to complete the work on time.  (*See id.*)  The Contract states, in relevant part:

> 1.4 lf Contractor fails to complete the Work in accordance with the Project Schedule, …  Contractor shall be liable for any damages to HIBBETT … caused by Contractor's delay, including, but not limited to, the additional costs, expenses and damages to HIBBETT … resulting from the delay, additional rent and/or penalties on the facility under construction, or any part of it, extended financing costs, additional insurance premiums, extended Project administration costs[,] additional occupancy costs for alternative premises, counsel fees and other direct and indirect damages. … All amounts owed to HIBBETT . . . under this Article shall be deducted by HIBBETT from any amount otherwise due to Contractor or, if deductions are not sufficient to compensate HIBBETT fully, shall be paid to HIBBETT by Contractor upon written demand.

> * * *

> 12.1 All time limits stated in the Contract Documents are of the essence, and Contractor, upon award hereof, shall commence and pursue with all due diligence until completion of all work necessary for completion within time limits, … otherwise, HIBBETT, in addition to any and all other remedies available to

> HIBBETT … shall assess liquidated damages equal to the actual costs to HIBBETT … occasioned by the delay, and the same may be withheld from any payment due from HIBBETT to Contractor under this Contract or any other contract between them, including the final payment.
>
> * * *
>
> 13.2 Payment may be withheld from Contractor … for failing to comply fully with this Contract, including, but not limited to, … (f) failing to prosecute the Work in accordance with the Project Schedule … and (i) otherwise failing to comply with other terms of this Contract...

(Contract §§ 1.2, 1.4, 12.1, 13.2).

On May 5, 2023, Hibbett filed this action, invoking diversity jurisdiction under 28 U.S.C. § 1332. (*See* Compl. ¶ 4). The only relief Hibbett sought was a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 and Rule 57, Fed. R. Civ. P., establishing the parties' respective rights and obligations under the Contract. (*See* Compl. ¶¶ 1,15). Hibbett's Complaint acknowledged that it withheld unspecified amounts otherwise owed to TCH based on the terms of the Contract and TCH's delay in completing work and alleged that TCH was "now demanding final payment." (*See id.* ¶¶ 7-13).

TCH moved to dismiss the original Complaint on two grounds. (Doc. 6). First, TCH argued pursuant to Rule 12(b)(1), Fed. R. Civ. P., that diversity jurisdiction is lacking, claiming that the amount in controversy did not exceed $75,000. (*Id.* ¶¶ 2-4). In support, TCH accused Hibbett of having itself breached the Contract by withholding payment of sums owed and argued that the only amount in controversy is the $53,050 TCH claims to be owed. (*Id.* ¶ 4). Second, TCH alleges improper venue under Rule 12(b)(3), Fed. R. Civ. P. (Doc. 6 ¶¶ 5-8). TCH claimed that Alabama is not the proper venue because the subject property where it supplied all work and materials is in Dallas, Texas. (*Id.*) TCH further noted that its Lien was recorded in Texas pursuant

to Texas state law, and argued that this court "lacks the authority to redress [TCH's] statutorily protected … lien rights which cannot be waived by contract." (*Id.* ¶¶ 7-8).

Hibbett opposed TCH's motion to dismiss, arguing that the amount in controversy requirement was met. (*See* Doc. 10 ¶¶ 1-4). Hibbett noted that, while TCH claimed to be owed only $53,050, Hibbett was entitled not only to have withheld such amount *but also* to recover additional "counsel fees and other direct and indirect damages, (*e.g.*, lost sales for at least several months' delay in opening the store)." (Doc. 10 ¶ 3) (emphasis omitted). On venue, Hibbett emphasized that TCH agreed that any controversy arising out of the Contract would be resolved in the state or federal courts in Jefferson County, Alabama (where this court sits), and to waive any objections to such venue. (*Id.* ¶¶ 5-8). Hibbett further argued that TCH recording the Lien in Texas subsequent to the filing of this suit should not allow TCH to avoid the Contract's venue clause. (*Id.*)

Shortly after filing its opposition to the motion to dismiss, Hibbett also filed an "Amended Complaint for Interpleader and Declaratory Judgment." (Doc. 11). Hibbett re-asserts its claim that TCH breached the Contract by failing to complete its work on time. (Amd. Compl. ¶¶ 6-11). The Amended Complaint also includes allegations that TCH "demanded final payment in the amount of $53,050.00" and that Hibbett had learned that TCH recorded the Lien against Hibbett and the owner of the shopping center from TCH's motion to dismiss. (*Id.* ¶¶ 12, 14). The relief demanded in the Amended Complaint is similar but not identical to that of its predecessor. Count II of the Amended Complaint again prays for a declaratory judgment regarding the parties' rights and duties under the Contract, but also includes provision asking for a determination of the validity *vel non* of the Lien. (*Id.* ¶¶ 21-31; Unnumbered Ad Damnum Clause following ¶ 31). In the newly asserted Count I, Hibbett asks to interplead the $53,050 that TCH claims to be owed pursuant to

4

Rule 22, Fed. R. Civ. P. (Amd. Compl. at 1; ¶¶ 15-20). Hibbett contemporaneously filed a motion to interplead those funds. (Doc. 12). Based upon the filing of the Amended Complaint, TCH's motion to dismiss the original Complaint was termed as moot. (Doc. 13). Hibbett's interpleader motion, which went unopposed, was granted. (Doc. 22).

On September 1, 2023, TCH filed a document styled, "Defendant's Answer and Motion to Dismiss Plaintiff's [Amended] Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(3)." (Doc. 27). Caption notwithstanding, the filing is not, in substance, an Answer.[2] Rather, it is devoted entirely to reasserting the Rule 12(b) defenses that TCH raised in its prior motion to dismiss, *i.e.*, lack of subject-matter jurisdiction and improper venue. (*Compare* Doc. 27 *with* Doc. 6).[3] As such, this court will address the filing as if it were styled solely as a motion to dismiss the Amended Complaint. While Hibbett filed an opposition to TCH's now moot "first" motion to dismiss (Doc. 10), it did not file a response to the renewed motion. TCH also did not file a reply brief in support of either its original or renewed motion to dismiss.

On April 1, 2024, with the discovery period having closed, Hibbett moved for summary judgment on its claim (Doc. 30) and filed a supporting brief (Doc. 31). Hibbett's motion and brief

---

[2] Rule 7, Fed. R. Civ. P., "draw[s] a distinction between pleadings, which include 'an answer to a complaint,' and motions." *United States v. Kaniadakis*, 2017 WL 2986269, at *2 (M.D. Fla. July 13, 2017). "The purpose of a responsive pleading is to put everyone on notice of what the defendant admits and what it intends to contest." *Peak v. ReliaStar Life Ins. Co.*, 2018 WL 6380772, at *2 (N.D. Ga. Sept. 28, 2018) (*quoting Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 395 (7th Cir. 2014)). Thus, a defendant's Answer must "admit or deny the allegations asserted against it." Rule 8(b)(1)(B), Fed. R. Civ. P. TCH's "Answer and Motion to Dismiss" does not admit or deny any allegations. Rather, it reiterates that the action is due to be dismissed for lack of jurisdiction and/or improper venue. (Doc. 27).

[3] Although TCH's filing is in substance a renewed motion to dismiss, when filing it in the court's CM/ECF electronic filing system, TCH's counsel designated the document as an "Answer," thereby causing it to be identified in the system as a pleading rather than pending motion. (*See* Docket Sheet, Doc. 27 ("ANSWER to 11 Amended Complaint by TCH Development Inc. (Wiley, Kevin) (Entered: 09/01/2023)").

are accompanied by four exhibits: (1) a declaration made pursuant to 28 U.S.C. § 1746 by Jeremy Brown, Hibbett's Director for Construction and Design (Doc. 31-1); (2) a copy of the Contract (Doc. 31-2); (3) a copy of the Contract's "Project Schedule" (Doc. 31-3); and (4) a "Final Waiver of Lien - Material or Labor" (Doc. 31-4).  The undersigned entered a Submission Order providing TCH until April 23, 2024, to file any opposition to the motion for summary judgment.  (Doc. 32). TCH has not filed any response as of the date of this Memorandum Opinion and Order.  Hibbett filed a supplemental "reply" brief to its motion, highlighting the lack of any opposition by TCH. (Doc. 33).

## II.    Discussion

Pending before the undersigned are: (1) TCH's motion to dismiss the Amended Complaint for (a) lack of subject-matter jurisdiction and/or (b) improper venue (doc. 27) and (2) Hibbett's motion for summary judgment (doc. 30).  TCH's motion must be resolved before Hibbett's, because a federal court cannot address a determination on the merits, such as a motion for summary judgment, unless it has jurisdiction. *See Sierra v. City of Hallandale Beach, Fla.*, 996 F.3d 1110, 1115 (11th Cir. 2021).  Either of TCH's contentions can be addressed first. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 100-01 n. 3 (1998)).  Subject-matter jurisdiction "concerns a court's competence to adjudicate a particular category of cases," and a court must consider it *sua sponte* even if no party contests it, while the issue of venue "is waived if not timely raised." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006).  Because federal subject-matter jurisdiction presents the "far weightier" matter, *id.*, the undersigned addresses it first.

6

**A. TCH's Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

Federal district courts are courts of limited jurisdiction and may hear only the types of cases authorized by the Constitution and federal statute. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Subject-matter jurisdiction cannot be created by waiver, forfeiture, or consent of the parties. *See Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009). Thus, federal courts have an independent duty to raise and consider subject-matter jurisdiction whenever it may be lacking. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). If a district court determines that subject-matter jurisdiction does not exist, the action must be dismissed. Rule 12(h)(3), Fed. R. Civ. P. To invoke this court's diversity jurisdiction, Hibbett must meet two elements: (1) the amount in controversy must exceed $75,000, exclusive of interest and costs, and (2) the parties must be citizens of different states. 28 U.S.C. § 1332(a)(1). (*See* Amd. Compl. ¶ 3). TCH's jurisdictional challenge goes only to the amount in controversy.[4]

**i.    Standard of Review to Determine Amount in Controversy**

Hibbett seeks a declaratory judgment pursuant to 28 U.S.C. §2201 *et seq*. (*See* Amd. Compl. at 8, Ad Damnum Clause following ¶¶ 22, 31; *see also* Doc. 31 at 11). "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." *Fastcase, Inc. v. Lawriter, LLC*, 907 F.3d 1335, 1342 (11th Cir. 2018) (*quoting Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805,

---

[4] There is no dispute that Hibbett and TCH are citizens of different states. Both parties are alleged to be corporations. (Amd. Compl. ¶¶ 1, 2). Each is therefore a citizen of every State in which it is incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Hibbett has pled that it is incorporated in Delaware and has its principal place of business in Alabama (Amd. Compl. ¶ 1) and that TCH is both incorporated and has its principal place of business in Texas. (*Id.* ¶ 2). Because TCH has not challenged those allegations, they are sufficient to establish that the parties are diverse. *See Allapattah*, 545 U.S. at 553.

807 (11th Cir. 2003) ("*McKinnon Motors*") (*quoting in turn Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000)). "Stated another way, the value of declaratory relief is 'the monetary value of the benefit that would flow to the plaintiff if the [relief he is seeking] were granted." *South Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (*quoting Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000)).

Hibbett has pled that the amount in controversy exceeds $75,000, exclusive of interest and costs. (Amd. Compl. ¶ 3). Under the Supreme Court's seminal decision in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) ("*Red Cab*"), such a formal allegation is normally sufficient to establish the jurisdictional sum if made in "good faith." *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith." (*citing Red Cab*, 303 U.S. at 288)); *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 665 (5th Cir. 1971) ("[A] formal allegation [that the amount in controversy exceeds the statutory minimum] is sufficient, unless the bill contains others which qualify or detract from it in such measure that when all are considered together it cannot fairly be said that jurisdiction appears on the face of the complaint …" (*quoting KVOS, Inc. v. Associated Press*, 299 U.S. 269, 277 (1936)). [5]

The *Red Cab* "good faith" standard is an objective one,[6] and can be expressed as a determination that it does not appear "to a legal certainty that the claim is really for less than the jurisdictional amount." *Opelika Nursing Home*, 448 F.2d at 663. The "legal certainty" standard

---

[5] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[6] *See Burns v. Anderson*, 502 F.2d 970, 971-72 (5th Cir. 1974).

authorizes courts to exclude from the amount in controversy the value of types and amounts of damages and other relief that, as a matter of law, cannot be awarded. *See Thomas v. Generac Power Sys. Inc.*, 2022 WL 4091735, at *2 (11th Cir. Sept. 7, 2022); 14B Wright and Miller, Fed. Prac. & Proc. ("Wright & Miller") § 3702 (5th ed. June 2024 Update).

The undersigned notes, however, that the Eleventh Circuit held in *McKinnon Motors, supra*, that "where jurisdiction is based on a claim for indeterminate damages, the *Red Cab. Co.* 'legal certainty' test gives way, and [the plaintiff] seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum." 329 F.3d at 807 (*citing Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356–57 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072–77 (11th Cir. 2000)). *McKinnon Motors* imported that "preponderance" standard from *Tapscott* where it had been held that a removing defendant must establish the amount in controversy and the plaintiff "has made an unspecified demand for damages" in state court. *see* 329 F.3d at 807; *Tapscott*, 77 F.3d at 1357. The *McKinnon Motors* court deemed its case, in which the plaintiff filed the case in federal court and sought a declaratory judgment, to be in an "analogous" and "converse context" to a removal like *Tapscott*. *Id.* (*quoting St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)).

In *McKinnon Motors*, the insurer asserted that its claim for a declaratory judgment put more than $75,000 in controversy, even though the policy at issue was limited to $50,000 of coverage, because the insured had also threatened to sue the insurer for the tort of bad faith. *See id.* at 807-08. The Eleventh Circuit concluded that, because the defendant insured had "not placed any dollar amount on the various damages it is seeking under its bad faith claim," the alleged damages were "indeterminate" and the plaintiff insurer had to establish the value of that claim by a preponderance

9

of the evidence in order to show that the amount in controversy requirement had been met. *Id.* at 808.

Since *McKinnon Motors*, the Eleventh Circuit has applied its "preponderance" standard in two more published decisions involving actions originally filed in federal court: *Fastcase, supra,* and *McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F.4th 1309 (11th Cir. 2021). The former, like *McKinnon Motors*, involved a diversity action in which the plaintiff sought only a declaratory judgment. *See Fastcase*, 907 F.3d at 1339. The court in *Fastcase* clarified, however, that *McKinnon Motors* did not imply that its "preponderance" standard "applies to all declaratory judgments." *Id.* at 1342 n. 5. Rather, the court said, that the "heightened standard only applies to claims involving unspecified or indeterminate damages," *id.* (*citing McKinnon Motors*, 329 F.3d at 807; *Tapscott*, 77 F.3d at 1356-57), where it is "'warranted because there simply is no estimate of damages to which a court may defer.'" *Id.* at 1342 (*quoting Tapscott*, 77 F.3d at 1356-57). The Eleventh Circuit explained: "It is not the type of relief that triggers the preponderance requirement, but instead the specificity with which the plaintiff pleads the amount in controversy." *Id.* Most recently, the Eleventh Circuit extended the applicability of the "preponderance" standard to pure damages claims brought by plaintiffs suing in federal court in *McIntosh*.[7] In considering whether diversity jurisdiction existed, the Eleventh Circuit held, quoting *Fastcase*, that, because the

---

[7] The plaintiffs there were ticketholders for a cruise who claimed that the defendant cruise line had, despite being aware of a large hurricane set to make landfall near the port of departure, unreasonably refused to cancel the trip or authorize refunds until the day the voyage was set to begin. *See McIntosh*, 5 F.3d at 1311.

plaintiffs had "'ple[d] an unspecified amount of damages,'" they had the burden to prove by a "preponderance of the evidence" that the amount in controversy was met. *Id.* at 1312.[8]

Unlike the *Red Cab* standard, under a "preponderance" standard, a court weighs whether it is more likely true or not true that the amount in controversy is met, without any presumption or deference afforded to the plaintiff's estimation of the value of the claims. *See Fastcase*, 907 F.3d at 1342. Whether a plaintiff filing suit in federal court is entitled to rely on the *Red Cab* standard or must instead prove by a "preponderance of the evidence" that the amount in controversy requirement is met may be practically significant. In short, the latter represents a materially "heightened standard" for the diversity plaintiff. *Fastcase*, 907 F.3d at 1342 & n. 5.

TCH has not contested Hibbett's invocation of the *Red Cab* standard. Nor does TCH argue in favor of the "preponderance" standard or cite *McKinnon Motors*, *Fastcase*, or *McIntosh*. (*See* Doc. 27). Nevertheless, to the extent that those cases would require the "preponderance" standard to be employed in determining the amount in controversy, the undersigned would be bound to apply it. *See Doe v. Predator Catchers, Inc.*, 2023 WL 4107084, at *3 (M.D. Fla. June 21, 2023) (recognizing that given its "independent obligation to ensure that subject matter jurisdiction exists, … the Court must apply the correct legal standard to the analysis."). Following a review of the

---

[8] Since *McKinnon Motors*, the Eleventh Circuit has also applied or acknowledged its "preponderance" standard in multiple unpublished decisions involving actions originally filed in federal court. *See King v. Epstein*, 167 F. App'x 121, 123 (11th Cir. 2006); *Bradley v. Kelly Servs., Inc.*, 224 F. App'x 893, 895 (11th Cir. 2007); *Rance v. D.R. Horton, Inc.*, 316 F. App'x 860, 863 (11th Cir. 2008); *Kivisto v. Kulmala*, 497 F. App'x 905, 907 (11th Cir. 2012); *Doane v. Tele Cir. Network Corp.*, 852 F. App'x 404, 406–07 (11th Cir. 2021). However, such opinions are not binding precedent. *See* 11th Cir. R. 36-2; *Hunter v. Social Sec. Admin., Comm'r*, 808 F.3d 818, 821 n. 2 (11th Cir. 2015).

filings, the undersigned finds that Hibbett meets the amount in controversy threshold under both the *Red Cab* and "preponderance" standards. [9]

ii.    **Analysis**

TCH attached to its motion to dismiss the Complaint an affidavit and other documentation related to a mechanic's and materialman's lien in the amount of $53,050 (the "Lien") that TCH recorded against the subject store property.  (*See* Doc. 6 ¶¶ 4 & 7; Doc. 6-1).  The affidavit supporting the Lien was sworn by TCH's president, Abdul Karriem, who asserted that "[a]fter allowing all just and lawful offsets, payments and credits, the amount of $53,050.00 remains

_____

[9] All of that said, the undersigned opines that *Red Cab* and not the "preponderance" standard is the appropriate standard of review, because the undersigned doubts that *McKinnon Motors*, *Fastcase*, or *McIntosh* are valid and binding precedents insofar as they would suggest that the *Red Cab* standard "gives way" to a "preponderance" standard under the circumstances here.  Under the "prior panel" rule, where there is a conflict between panel decisions of the Eleventh Circuit, or between panel decisions of the Eleventh Circuit and its predecessor, the old Fifth Circuit, appellate panels and district courts in the Eleventh Circuit are bound to follow the earliest court of appeals decision.  *See Cohen*, 204 F.3d at 1072; *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc).  In the 65 years between the Supreme Court's decision in *Red Cab* in 1938 and the Eleventh Circuit handing down *McKinnon Motors* in 2003, both the old Fifth Circuit and then the Eleventh Circuit applied the *Red Cab* "good faith" and "to a legal certainty" test in many dozens of cases to assess the amount in controversy of actions filed originally in federal court without ever suggesting that such test might be displaced by a "preponderance of the evidence" standard.  *See, e.g., Brown v. United Gas Pub. Serv. Co.*, 96 F.2d 264, 264 (5th Cir. 1938); *Olan Mills, Inc., of Tenn. v. Enterprise Pub. Co.*, 210 F.2d 895, 896 (5th Cir. 1954); *Burks v. Texas Co.*, 211 F.2d 443, 445 (5th Cir. 1954); *Payne v. State Farm Mut. Auto. Ins. Co.*, 266 F.2d 63, 64 (5th Cir. 1959); *Anderson v. Moorer*, 372 F.2d 747 (5th Cir. 1967); *Jones v. Landry*, 387 F.2d 102, 104 (5th Cir. 1967); *Opelika Nursing Home*, 448 F.2d at 663; *Dassinger*, 505 F.2d at 673-74; *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985); *Holley Equip. Co. v. Credit All. Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987); *Morrison*, 228 F.3d at 1268; *Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1048 (11th Cir. 1993); *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1472 (11th Cir. 1997); *Ericsson GE Mobile Comm's, Inc. v. Motorola Comm's & Electronics, Inc.*, 120 F.3d 216, 220-21 (11th Cir. 1997); *Broughton v. Florida Int'l Underwriters, Inc.*, 139 F.3d 861, 863 (11th Cir. 1998); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 & n. 10 (11th Cir. 2000); *Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1274 n. 6 (11th Cir. 2001).  Applying the "prior panel" rule, the *Red Cab* standard carries the day and is the appropriate standard of review.  However, in an abundance of caution, this court will apply both the *Red Cab* and "preponderance" standards to ensure Hibbett's filings meet the amount in controversy to attach federal diversity jurisdiction.

unpaid and is due and owing to TCH for the labor and materials furnished to the Property." (Doc. 6-1 at 3-5 ("Karriem Affidavit" or "Karriem Aff." ¶ 8)). Other documents indicate that the total amount TCH claims is comprised of $49,500, representing a "10% Hold Back" (Doc. 6-1 at 8-9), plus $3,550 for certain itemized "Additional Services" that TCH claims to have provided. (*See id.* at 6-7).

Hibbett has formally pled that the amount in controversy exceeds $75,000, exclusive of interest and costs. (Amd. Compl. ¶ 3). Hibbett also pled supporting allegations that a dispute remains whether Hibbett is liable to pay the $53,050 that TCH claims to be owed under the Contract. (*See* Amd. Compl. ¶¶ 7-14, 22-27; Doc. 27 ¶¶ 2-3). However, another $21,951 must be accounted for in order for the amount in controversy to exceed $75,000 and meet the jurisdictional minimum. To bridge that gap, Hibbett asserts that it might recover additional sums under the Contract, including "direct and indirect damages" and "counsel fees" incurred as a result of TCH's failure to complete its work on time. (*See* Amd. Compl., ¶ 7 (*quoting* Contract §§ 1.2-1.4); *id.* at 8, Ad Damnum Clause, following ¶ 31; Doc. 27 ¶ 3).

TCH has not responded to Hibbett's claim that, presuming TCH's breach, Hibbett may recover additional damages and attorney's fees under the Contract, and the undersigned finds that Hibbett might be legally eligible to recover such items. *See* 28 U.S.C. § 2202 ("Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."); *Mack v. USAA Cas. Ins. Co.*, 994 F.3d 1353, 1357 (11th Cir. 2021) (a "plaintiff may follow any successful claim for a declaratory judgment with a request for supplemental relief" which may include damages and, where applicable, attorney's fees). Further, TCH has not offered any argument or authority alleging that the value of such damages and fees may not be included in the

amount in controversy.  *See Holley Equip. Co.*, 821 F.2d at 1536 (lost profits and other damages available for breach of contract are part of the amount in controversy); *Smith v. GTE Corp.*, 236 F.3d 1292, 1305 (11th Cir. 2001) (the amount in controversy includes a "reasonable estimate" of attorney's fees when their recovery is authorized by contract or statute).

      **a.  The *Red Cab* Standard**

Under the *Red Cab* standard, the action is not subject to dismissal unless "it is apparent to a legal certainty" that the claims are worth less than the jurisdictional sum.  *Morrison*, 228 F.3d at 1268 (*quoting Red Cab*, 303 U.S. at 289).  Again, the parties agree that $53,050 is in controversy, meaning that more than another $21,950 is needed for jurisdiction to attach.  Hibbett maintains that such requirement is met based on damages and attorney's fees that Hibbett claims it might itself recover under the Contract once TCH is declared in breach.  As explained previously, although Hibbett has presented evidence that it lost approximately $420,000 in "sales" as a result of TCH's delay, neither that proof nor the pleadings affirmatively disclose that Hibbett might potentially recover more than $25,501 in damages and attorney's fees.  Such is not necessary to sustain jurisdiction, however, given the "permissive nature of [*Red Cab*'s] 'legal certainty' standard for the sufficiency of a plaintiff's amount in controversy allegation."  *Cohen*, 204 F.3d at 1080 n. 10.

While TCH has argued that only the $53,050 it claims it is owed is truly in controversy, TCH has done so in a conclusory fashion, without citing any argument or authority disputing Hibbett's claim that it might be eligible for additional damages and attorney fees pursuant to the terms of the Contract.  (*See* Doc. 27, ¶¶ 3-4).  TCH also has not offered any evidence or argument tending to show that the amount of such additional damages and fees would, as a matter of law, be less than that required for the total value in controversy to exceed $75,000.  Given TCH's failure

to contest either point and Hibbett's allegation of approximately $420,000 in lost "sales," as well as potential attorney's fees, the undersigned cannot say that "it is apparent to a legal certainty" that the value of the declaratory judgment sought by Hibbett could not exceed the $75,000 required for jurisdiction. *See Hunt*, 432 U.S. at 346-48 (finding jurisdiction under the *Red Cab* standard based on consideration of substantial lost sales, which, the Court recognized, "could lead to diminished profits"). As such, Hibbett's claims meet the amount in controversy requirement to attach federal jurisdiction to this matter.

### b. The "Preponderance" Standard

The Amended Complaint does not allege or demand a specific amount for the "direct and indirect damages" and "counsel fees" Hibbett claims eligibility for or plead supporting facts for calculating them. Rather, Hibbett offers Brown's declaration, which asserts that TCH was three months late finishing the store and that Hibbett "lost approximately $140,000 per month in sales." (Brown Decl. ¶ 5). That would translate to about $420,000 in "lost … sales." The problem, however, is that Brown's articulation reflects lost *gross revenue*. Gross revenue is not the proper measure of damages under Alabama contract law, which the parties have stipulated governs. (*See* Contract, § 19.1). Alabama contract law allows damages to be awarded for lost *profits*, requiring the reduction of gross revenue by Hibbett's applicable overhead costs. *See Intergraph Corp. v. Bentley Sys. Inc.*, 58 So. 3d 63, 78–79 (Ala. 2010) (holding that trial court erred by awarding "lost revenues, not lost profits" by failing to account for "what it would have cost the injured party if the contract had been performed without the breach"). Hibbett has not alleged or proven an amount for lost profits, nor has Hibbett alleged a basis by which they might be ascertained.

Under the Contract, Hibbett might recover not only lost profits caused by TCH's alleged breach, but also an equal amount in liquidated damages. (*See* Contract, § 12.1). Again, while

Hibbett claims to have lost "approximately" $420,000 in "sales" as a result of TCH's alleged three-month delay, no allegations or evidence indicate how much of that figure might represent recoverable lost profits.  Hibbett also acknowledges withholding ten percent of the $495,000 of the Contract price, or $49,500.  ((Doc. 31 at 6 (citing Brown Decl. ¶ 6)).  Likewise, while Hibbett asserts that it might also recover attorney's fees, it has not placed any dollar amount on those nor has Hibbett offered allegations or evidence of attorney time, hourly rates, or attorney's fees awarded in similar cases.  Because Hibbett has not "placed any dollar amount" on the additional contract damages or attorney's fees it claims or explained how they might be calculated, those damages are wholly "indeterminate" for purposes of applying the "preponderance" standard set forth in *McKinnon Motors* and its progeny.  *See McKinnon Motors*, 329 F.3d at 808; *see also Fastcase*, 907 F.3d at 1343 (holding that plaintiff's claim that, without a declaratory judgment, it would lose its contract with a third party and that such "contract is worth well over $75,000" was "a claim for an indeterminate amount of damages").

Because Hibbett has alleged indeterminate damages, *McKinnon Motors*, *Fastcase*, and *McIntosh* would demand that the *Red Cab* standard to "give[ ] way," to the "preponderance" standard to verify that the amount in controversy threshold his met. *McKinnon Motors*, 329 F.3d at 807.  Since $53,050 is agreed by the parties to be in controversy, Hibbett must establish by a preponderance of the evidence that the damages and attorney fees Hibbett might be eligible to recover would exceed between $21,951, exclusive of interest and costs.  The courts are authorized to rely upon their "judicial experience" and "common sense" when applying the "preponderance" standard to determine whether the amount in controversy threshold is met.  *See Roe v. Micelin North America, Inc.*, 613 F.3d 1058, 1065 (11th Cir. 2010).  Likewise, "Eleventh Circuit precedent permits district courts to make 'reasonable deductions, reasonable inferences, or other reasonable

extrapolations' from the pleadings to determine whether it is facially apparent" that the amount in controversy is met. *Id.* at 1061-62 (*quoting Pretka v Kolter City Plaza, II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010)).

This court finds it to be a very short logical step to infer that, once overhead is taken from $420,000 in lost sales, Hibbett's lost profits alone would exceed $21,951. This is even without taking into account the liquidated damages and/or attorney's fees, to which Hibbett alleges entitlement under the Contract and which the undersigned has already determined, *supra*, that Hibbett may be eligible to recovery such items. As such, the undersigned finds that Hibbett's Amended Complaint shows, by a preponderance of the evidence, that the amount in controversy exceeds $75,000 and meets the requirements of the "preponderance" standard to allow federal jurisdiction to attach.

Because Hibbett's claims meet the amount in controversy required to attach federal jurisdiction, under either standard mentioned herein, TCH's motion to dismiss the Amended Complaint is due to be denied.

**B.  TCH's Motion to Dismiss for Improper Venue**

The undersigned now turns to TCH's motion to dismiss due to improper venue pursuant to Rule 12(b)(3), Fed. R. Civ. P.  (*See* Doc. 27 at 3-4).  Although not expressly citing the general federal venue statute, TCH references its provisions, which confer venue in any judicial district in which the defendant resides; in which a substantial part of the events or omissions giving rise to the claim occurred; or a substantial part of the property that is the subject of the action is situated. 28 U.S.C. § 1391(b).  (*See* Doc. 27 at 3).  TCH emphasizes that it does not reside in Alabama, the events giving rise to this action occurred in Texas, and the real property subject to TCH's Lien is also in Texas.  (*See* Doc. 27 at 3).

17

In response, Hibbett maintains that TCH has waived any objection to venue in the Northern District of Alabama by virtue of the Contract (*see* Doc. 6 ¶ 5), which provides:

> This Contract shall be interpreted in accordance with the law of the State of Alabama. In the event of controversy which results in the filing of any suit at law or in equity, such action shall be brought and maintained in court of competent jurisdiction (state or federal) in Jefferson County, Alabama. Hibbett and Contractor waive all objections they might otherwise have as to jurisdiction and venue and voluntarily submit to the jurisdiction of those courts and venue in Jefferson County, Alabama. . .

(Contract § 19.1).

Because venue is a waivable right, a normal venue analysis is not required if a defendant has waived their right to contest venue in a valid forum selection agreement. *See AFC Franchising, LLC v. Purugganan*, 43 F.4th 1285, 1296 (11th Cir. 2022). Hibbett argues that the Contract's venue provision applies and is enforceable. TCH's opposition filing does not contest that the provision applies to the claims in this action. TCH argues, instead, that the Contract is not "enforceable to support venue in this district" because this court "lacks the authority to redress" TCH's rights with respect to the Lien. (Doc 27 ¶¶ 6,8). TCH contends that its "right to record and enforce a mechanics lien in Texas cannot be contractually waived," citing the Texas Property Code:

> Notwithstanding any other law and except as provided by Section 53.282, any contract, agreement, or understanding purporting to waive the right to file or enforce any lien or claim created under this chapter is void as against public policy.

(Doc. 27 ¶ 7, (*citing* Tex. Prop. Code Ann. § 53.286 (West)).

The undersigned understands TCH's argument to relate to Hibbett's demand in the Amended Complaint for a declaratory judgment that TCH's Lien in Texas "is fraudulent, in that [TCH] executed a lien waiver stating that it had been paid in full and any indebtedness had been discharged and that it waived its right to claim a lien." (Amd. Compl. at 8; *see also id.* ¶ 14).

When Hibbett initially filed this action on May 3, 2023, TCH had not even recorded the Lien, so the original Complaint did not mention it, never mind seek to invalidate it.  (*See generally* Compl.). TCH recorded the Lien on May 31, 2023 (*see* Doc. 6-1 at 2), whereupon TCH sought to leverage the Lien as a basis for its initial motion to dismiss for improper venue.  (*See* Doc. 6 ¶¶ 4-8). However, Hibbett has sought declaratory relief from this court that would not purport to determine the validity of TCH's Lien.

Even presuming that the Texas statute cited by TCH implies that Hibbett is not entitled, as a substantive matter, to a declaration that the Lien on the store property in Texas is fraudulent or otherwise invalid, TCH has offered no argument, citation to authority, or explanation to support why that circumstance renders the Contract's venue provision unenforceable.  The undersigned concludes, therefore, that the Contract's venue provision applies to the claims in this action and is enforceable.  TCH's motion to dismiss for improper venue is due to be denied.

### C.  Hibbett's Motion for Summary Judgment

Finally, the undersigned turns to Hibbett's motion for summary judgment.  (*See* Docs. 30 & 31).  Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that Rule, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed. R. Civ. P.  Where, as here, the movant would bear the burden of proof at trial on the claim for which it seeks summary judgment, the movant "'must show affirmatively the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.'"  *Baker v. Upson Reg'l Med. Ctr.*, 94 F.4th 1312, 1317 (11th Cir. 2024) (*quoting United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc) (internal quotation marks omitted)).  At summary judgment,

the record evidence is viewed in the light most favorable to the non-movant. *See id.* at 1316-17 (*citing Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001).

TCH failed to file any opposition or other response to Hibbett's motion for summary judgment. Hibbett contends that such failure entitles Hibbett "to judgment in its favor," because, by failing to respond, TCH has "abandoned" all "arguments" that might have "existed in support of [TCH's] position." (Doc. 33 at 2). TCH's failure to respond to Hibbett's motion does not, however, authorize the court to simply grant summary judgment to Hibbett absent any analysis. *See Trustees of Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Emps. v. Wolf Crane Serv., Inc.*, 374 F.3d 1035, 1039 (11th Cir. 2004); Rule 56, Advisory Committee Notes to 2010 Amendment ("[S]ummary judgment cannot be granted by default even if there is a complete failure to respond to the motion …."). Rather, the court still "must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004).

TCH's failure to respond to Hibbett's motion does, however, authorize the undersigned to consider the facts alleged in the motion to be undisputed. *See* Rule 56(e)(2), Fed. R. Civ. P.; *Harrison v. Culliver*, 746 F.3d 1288, 1302 n. 22 (11th Cir. 2014). Such treatment does not extend to Hibbett's legal arguments or conclusions. *See Attison v. Whiting Door Mfg. Corp.*, 2021 WL 4816835, at *2 (C.D. Cal. May 21, 2021) ("The Court deems the facts proffered in the [Defendant's Statement of Undisputed Facts] which are not legal arguments or conclusions to be undisputed, as Plaintiff failed to respond to or dispute these facts." (*citing* Rule 56(e)(2), Fed. R. Civ. P.)). The undersigned may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Rule 56(e)(3), Fed. R. Civ. P. To show "entitlement" to summary judgment, the facts as shown by the evidence or deemed

20

undisputed under Rule 56(e)(2) must be sufficient to support judgment as a matter of law in favor

of the movant.  *See* Rules 56(a), (e)(3), Fed. R. Civ. P.

Underlying Hibbett's claim for a declaratory judgment is the parties' dispute over the

Contract – which party or parties might have breached it and how and whether the Lien TCH

recorded against the subject store property is valid.  Under Alabama law, a breach-of-contract

claim requires proof of the following elements: (1) a valid contract binding the parties; (2) the

plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting

damages. [10]  *National Fire & Marine Ins. Co. v. Wells*, 301 F. Supp. 3d 1082, 1096 (N.D. Ala.

2018) (*citing Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105–06 (Ala. 2002)).

Hibbett's motion seeks a declaration establishing six specific legal propositions:

. . . Hibbett respectfully prays that the Court grant its Motion for Summary
Judgment and that the Court enter an Order and Judgment that (i) Defendant [TCH]
breached its obligations under the Construction Contract; (ii) Hibbett is not and was
not in default of its obligations under the Construction Contract; (iii) Hibbett is
entitled to any remedies for Defendant's failure to perform its obligations under the
Construction Contract, including, but not limited to, the right to withhold payment
from Defendant, attorney's fees and other direct and indirect damages, including
lost profits; (iv) Defendant's lien is fraudulent, in that Defendant executed a lien
waiver stating that it had been paid in full and any indebtedness had been
discharged and that it waived its right to claim a lien; (v) Hibbett is entitled to
remedies under Tex. Civ. Prac. & Rem. Code § 12.002 (1999), as Defendant filed
a fraudulent lien against Hibbett; [and] (vi) Defendant's lien is invalid, to the extent
that Defendant requests that the lien attach to the real property, instead of Hibbett's
leasehold interest. . .

(Doc. 31 at 11).  The declarations sought are addressed individually below.

### i.    Declaration that TCH Breached the Contract

Hibbett first maintains it is entitled to a declaration that TCH breached its obligations under

the Contract.  Given TCH's failure to respond to Hibbett's motion for summary judgment, the

---

[10] As discussed, *supra*, the Contract provides that it will be interpreted in accordance with
Alabama state law.  (Contract, § 19.1).

undersigned considers the factual statements set forth in Hibbett's brief (*see* Doc. 31 at 2-7) to be undisputed.  *See* Rule 56(e)(2), Fed. R. Civ. P.; *Harrison*, 746 F.3d at 1302 n. 22.  Those facts establish that the Hibbett and TCH had a valid and binding contract, which neither party disputes. (*See* Doc. 31 at 2-5; *see also generally* Contract).  The facts in Hibbett's brief further establish that TCH breached the Contract by failing to complete its work by December 15, 2022, in accordance with the construction schedule and, instead, turned over the space to Hibbett approximately three months late.  (Doc. 31 at 5-6).  Hibbett's motion for summary judgment is, therefore, due to be granted to the extent Hibbett seeks a declaration that TCH breached its obligations under the Contract.

### ii.     Declaration that Hibbett is Not in Default Under the Contract

Hibbett also seeks a declaration that it did *not* itself breach the Contract.  (*See* Amd. Compl. at 8; Doc. 31 at 11).  For its part, TCH asserted that Hibbett is guilty of breach by failing to pay TCH $53,050 that remains outstanding.  (*See* Doc. 27, ¶¶ 1 & 3).  Although TCH has not responded to Hibbett's motion for summary judgment, TCH did file in support of its initial motion to dismiss a copy of an affidavit from its president, Abdul Karriem, claiming that Hibbett owes that amount. (Karriem Aff., ¶ 8).  Further, while Hibbett says it paid 90% of the $495,000 "contract price," or $445,500, Hibbett expressly admits to having "withheld the remaining ten percent," or $49,500. (Doc. 31 at 6; *see also* Brown Decl. ¶ 6).  Documents produced by TCH claims Hibbett has wrongfully withheld that ten percent and owes an additional $3,550 for certain other items.  (*See* Doc. 6-1 at 6-9).

Hibbett insists that the withholding was not in breach of the Contract but, instead, authorized by it.  Specifically, Hibbett claims the Contract gives Hibbett the right to withhold payments should TCH fail to finish the work on time.  (*See* Doc. 31 at 9).  The undersigned agrees

that the Contract imposes liability against TCH for both actual losses and an equal amount of liquidated damages.  (See Contract, §§ 1.2, 1.4, 12.1).  The undersigned further agrees that the Contract authorizes Hibbett to recoup amounts owed to it for a breach by withholding payments. (*See id.*, §§ 1.2, 1.4, 12.1, 13.2).

However, Hibbett has not shown that TCH's breach caused Hibbett to incur actual losses recoverable under Alabama contract law in the amount of $49,500 or more.  As discussed, Hibbett has presented evidence that it lost "approximately" $140,000 per month in "sales."  (Brown Decl. ¶ 6).  As previously noted, Alabama contract law does not authorize recovery of damages representing lost *gross sales revenue*; it potentially authorizes recovery for lost *profits* that would subtract all of Hibbett's costs were it to have been operating the store.  *See Intergraph Corp.*, 58 So. 3d at 78–79; *International Paper Co. v. Madison Oslin, Inc.*, 985 So. 2d 879 at 886, 890-91 (Ala. 2007); *American Res. Ins. Co. v. Evoleno Co., LLC, et al.*, 2008 WL 5071896, at *2 (S.D. Ala. Nov. 24, 2008).  "To recover lost profits, Plaintiff must allege and prove 'not only (a) what he would have received from the performance so prevented, but also (b) what such performance would have cost him (or the value to him thereof).  Unless he proves both of those facts, he cannot recover as damages the profits he would have earned from full performance of the contract.'"  *WM Mobile Bay Env't Ctr., Inc. v. City of Mobile Solid Waste Auth.*, 2015 WL 4856285, at *3 (S.D. Ala. Aug. 13, 2015), *aff'd*, 672 F. App'x 931 (11th Cir. 2016) (*quoting Integraph Corp.*, 58 So. 3d 63, 78 (Ala. 2010) (further citation omitted).

To prevail on its claim for a declaration that it did not breach the Contract by withholding payment, Hibbett has the burden as the movant to show that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law on the issue.  Hibbett has not done so. Although the Contract may authorize Hibbett to withhold payments beyond the 90% of the

Contract price, Hibbett has not presented evidence sufficient to establish relevant costs or lost profits. Therefore, the undersigned cannot determine the amount of either lost profits or liquidated damages. Further, the undersigned also cannot determine the amount Hibbett might have been authorized to withhold or if Hibbett has withheld too much, thereby potentially breaching the Contract.

### iii.    The Legal Effect of the Final Waiver of Lien and the Validity of the Lien

Hibbett also argues that TCH's lien is invalid based on the "Final Waiver of Lien – Materials and Labor" (Doc. 31-4 ("Final Waiver of Lien")), that it has submitted in support of its summary judgment motion. Hibbett further alleged that the Lien itself is fraudulent in nature. (*See* Doc. 31 at 10). The Final Waiver of Lien was executed by a TCH representative and notarized on February 20, 2023. (Final Waiver of Lien). The signature appears to match that of TCH's president, Abdul Karriem when compared to the affidavit TCH filed along with the Lien. (*See* Doc. 31-4 and Doc. 6-1 at 5). The operative language of the Final Waiver of Lien is as follows:

> The undersigned being duly sworn deposes and says that all labor, materials and services included in all previous and final payments have been fully paid and indebtedness discharged.
>
> In consideration of $495,000, receipt and sufficiency of which is acknowledged, the undersigned waives any right that the undersigned now has or in the future may have to claim a mechanic's or materialman's lien against the improvements located [on the property] to secure payment for labor and materials furnished by the undersigned.
>
> The undersigned has executed this waiver voluntarily and with full knowledge of their rights under the laws of the state of Texas.

(Doc. 31-4)(emphasis removed).

Hibbett argues summarily that, by executing the Final Waiver of Lien, TCH waived both "its claim to further payment" and "any right to claim a mechanic's or materialman's lien." (Doc. 31 at 10 (internal quotation marks and citation omitted)). Hibbett relates that, despite TCH's

execution of the Final Waiver of Lien, TCH demanded that Hibbett pay an additional $53,050 and filed the Lien against the store property.  (*Id.*)  Hibbett characterizes the Lien as "fraudulent" and claims that Hibbett is entitled to remedies under a Texas statute, Texas Civ. & Rem. Code § 12.002. (*Id.* at 10 & n. 1).

The above recitation effectively presents the entirety of Hibbett's discussion of these claims regarding the purported legal character and effect of both the Final Waiver of Lien and the Lien.  Hibbett's argument on these points consists of conclusory legal assertions with no citations to authority.  (*See id.* at 10).  Moreover, these arguments are the only proffered basis for Hibbett's motion for summary judgment to the extent it demands a declaratory judgment providing that:

> (iv) [TCH's] lien is fraudulent, in that [TCH] executed a lien waiver stating that it had been paid in full and any indebtedness had been discharged and that it waived its right to claim a lien;
>
> (v) Hibbett is entitled to remedies under Tex. Civ. Prac. & Rem. Code § 12.002 (1999), as [TCH] filed a fraudulent lien against Hibbett; [and]
>
> (vi) [TCH's] lien is invalid, to the extent that [TCH] requests that the lien attach to the real property, instead of Hibbett's leasehold interest.

(Doc. 31 at 11).

Hibbett's offer of bare legal assertions and characterizations with respect to the Final Waiver of Lien and the Lien itself without citing any authority is grounds to deny Hibbett's motion. As one member of this court has aptly explained:

> Numerous cases indicate that the burden rests on the parties to present arguments to the court, and that issues not substantively and meaningfully argued are waived. *See Old West Annuity and Life Insurance Co. v. Apollo Group*, 605 F.3d 856, 860 n.1 (11th Cir. 2010) (finding waiver when a party "has not presented substantive argument"); *Jones v. Secretary of the Department of Corrections*, 607 F.3d 1346, 1353-54 (11th Cir. 2010) ("We have repeatedly required litigants to ... provide arguments about their entitlement to relief" and relief will not be granted when a litigant fails "to elaborate or provide any citation of authority in support of the ... allegation."); *U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citing

> *Flanigan's Enterprises, Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that "fail[ure] to elaborate or provide any citation of authority in support [of an argument]" results in waiver) ) (alterations supplied); *see also Lyes v. City of Riviera Beach*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it.").

*Rolle v. Montgomery*, 2013 WL 12349544, at \*5 (N.D. Ala. July 19, 2013).

Because Hibbett has not supported its arguments, Hibbett's motion for summary judgment is due to be denied to the extent that Hibbett has demanded a declaratory judgment providing: (1) that TCH's Lien is "fraudulent," (2) that Hibbett is entitled to remedies under the Texas statute for TCH's filing of a "fraudulent" lien, (3) that the Lien is "invalid to the extent it attaches to the store property rather than just to Hibbett's leasehold interest, or (4) that Hibbett has not breached the Contract on the theory that the Final Waiver of Lien releases Hibbett from any "claim for further payment" (Doc. 31 at 10).[11]

---

[11] The undersigned would further note that there appears to be some question whether the Final Waiver of Lien is valid. In particular, while that document recites that it was given by TCH in consideration of $495,000, the receipt of which was acknowledged, it undisputed that Hibbett did not, in fact, deliver that sum to TCH. Rather, Hibbett has admitted to paying only 90% of that amount and withholding the remaining $49,500. It has been recognized in this context that one party "'cannot insist on the one hand that they are entitled to have the benefit of the cancellation and release of the property from the lien of the mortgage and at the same time deny to [the other party] the consideration which alleged[ly] moved [the other party] to enter such cancellation and to execute such relief.'" *Acme Roofing & Sheet Metal Co. v. Air Team USA, Inc.*, 2014 WL 1278078, at \*13 (N.D. Ala. Mar. 27, 2014) (*quoting Mitchell v. Cobb*, 118 So. 2d 918, 921 (Ala. 1960)). Thus, when "the parties have agreed to a release based on specified consideration and the specified consideration was not in fact paid …., the Alabama Supreme Court has refused to enforce the release." *Id.* (*citing Mitchell*, 118 So. 2d at 921-22).

### III.   Conclusion

Based on the foregoing, Defendant TCH's motion to dismiss (Doc. 27) is **DENIED** in its entirety while Plaintiff Hibbett's motion for summary judgment (Doc. 30) is **GRANTED IN PART AND DENIED IN PART**.   Specifically, Hibbett's motion for summary judgment is **GRANTED** to the extent that Hibbett seeks a declaratory judgment that TCH breached its obligations under the parties' Contract, but the motion is **DENIED** in all other respects.

DONE this 10th day of January, 2025.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

27